**ANSELMO R. BOSTON, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2010-0086

Supreme Court of the Virgin Islands

May 2, 2012

634

635

BENJAMIN A. CURRENCE, ESQ., St. Thomas, USVI, *Attorney for Appellant.*

TERRYLN M. SMOCK, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(May 2, 2012)

HODGE, *Chief Justice.* Anselmo R. Boston was convicted of third degree assault and using a dangerous weapon during the commission of a crime of violence for allegedly striking Jamie Cockayne with a pool cue at a bar on St. John. Boston was also convicted of simple assault for allegedly striking Cockayne several times about his body later that evening on the streets of St. John. On appeal, Boston argues that there was insufficient evidence presented at trial to sustain his conviction for simple assault. We find that the evidence presented at trial was sufficient to allow the jury reasonably to conclude that Boston was one of three individuals who assaulted Cockayne on the streets of St. John. Based on the allegations proffered by Boston's co-defendant Kamal Thomas, however, we will remand this matter to the Superior Court for a hearing regarding possible juror misconduct.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

At trial, there was conflicting testimony surrounding the events that occurred on the evening of June 18, 2007 and the early morning hours of June 19, 2007. Since Boston has challenged the sufficiency of the evidence, however, we will recapitulate the facts in the light most favorable to the People. *See Browne v. People*, 55 V.I. 931, 935 (V.I. 2011)

("When a defendant challenges the sufficiency of the evidence presented at trial, we must view the evidence in the light most favorable to the People . . . ." (quoting *Mendoza v. People*, 55 V.I. 660, 666-667 (V.I. 2011))).

Kenneth Rawlins testified that on June 18, 2007, after finishing work, he went to a nearby bar on St. John to relax and have a beer. While at the bar, Rawlins overheard Boston telling another individual that he was going to beat Cockayne up for kicking his girlfriend's jeep earlier that day. Rawlins told Boston and Kamal Thomas, who was with Boston at the bar, that beating someone up for kicking Boston's girlfriend's jeep was ridiculous, and that they should leave the situation alone. Rawlins then went outside to sit down and relax. While outside, Rawlins saw Cockayne enter the bar. Moments later he heard a loud commotion and what sounded like a fight coming from inside the bar, and then he saw Tom Debelek, the bartender, bring Cockayne outside. Rawlins went back inside the bar and saw Boston holding a broken pool cue in his hand. He told Boston that he was acting ridiculous and to leave Cockayne alone. He told Boston that Cockayne had left the bar and offered to buy Boston a drink if he would forget about Cockayne. Boston replied that he was going to get even with Cockayne and "kick his ass." Boston then left the bar. Rawlins followed him outside, pleading with him to leave the situation alone. Once outside, Rawlins saw Thomas pick up a wooden stick, and then he saw Thomas and Boston run up the road in the direction Cockayne had headed.

Lionel Sprauve testified that as he was leaving the fire station around 11:00 p.m. — which was around the same time as Boston and Cockayne's altercation in the bar — he saw Thomas and another individual who he could not identify chasing Cockayne down the street.[1] Additionally, Leann Oquendo testified that at some point between 11:00 p.m. and 11:30 p.m., while driving in the same general area where Sprauve testified he saw Thomas and another individual chasing Cockayne down the street, she saw three black males running up the road in the direction of a white

---

[1] The witness indicated on cross examination that the unidentified individual chasing Cockayne down the street was not Boston.

male.[2] She further stated that one of the individuals running up the road was carrying a stick, and that when the three individuals reached the white male, they surrounded him in the street. The individual holding the stick then went to hit the white male with the stick, but stopped because Oquendo blew her car horn. After looking around, he went to strike him again but stopped because Oquendo, again, blew her car horn. After blowing her horn twice, Oquendo drove off to alert the authorities, leaving the white male in the street still surrounded by the three other individuals. Approximately twenty minutes after Thomas and Boston ran up the road in the direction Cockayne had headed, Boston returned alone to the bar where the initial altercation had occurred. According to Rawlins, when Boston returned to the bar his shirt was covered in dirt, he was sweating heavily, and he was acting shaky and nervous.

Later that evening, at approximately 12:20 a.m., a stabbing incident was reported to have occurred on St. John. Officer Earl Mills responded to the report and discovered the body of a white male. Although it was not clearly established at trial, it appears that the deceased was later identified as Cockayne and that he died as the result of stab wounds. Dr. Francisco Landron, the forensic pathologist and medical examiner who examined Cockayne's body, testified that an external examination of the body revealed that Cockayne had sustained a substantial number of blunt force injuries.[3] These injuries manifested themselves in the form of contusions[4] and abrasions,[5] and were visible on Cockayne's face, arms, neck, shoulder, and legs. Dr. Landron further stated that these injuries were consistent with the type of injuries a person could have gotten from being struck with a stick or a piece of wood.

■ During the course of the Virgin Islands Police Department's investigation into Cockayne's death, Officer Delbert Phipps questioned Boston about his altercation with Cockayne at the bar. According to

---

[2] The evidence at trial indicated that Cockayne was Caucasian, and Thomas and Boston are African-American.

[3] Dr. Landron explained that blunt force injures are produced by a blunt object, such as "a bat, a hammer, [a] punch, a kick [or] any type of weapon without a sharp edge." He further indicated that a piece of a board or a stick could cause blunt force injuries.

[4] A contusion is a bruise. See WEBSTER'S THIRD NEW INT'L DICTIONARY 497 (1993).

[5] An abrasion is an injury that removes the superficial layer of the skin from either scrapping or heavy pressure. See WEBSTER'S THIRD NEW INT'L DICTIONARY, at 5.

Officer Phipps, Boston admitted to striking Cockayne with a pool cue at the bar:

> Boston said he grabbed a pool [cue] from someone and he was going to strike [] Cockayne but someone, not knowing who, held the stick and he was able to go and grab another stick and with that he struck, must have struck Cockayne somewhere on the shoulder, and the stick was broken in several pieces.

(J.A. 216.) Officer Phipps's testimony that Boston admitted to striking Cockayne with a pool cue is further supported by Boston's signed statement, in which he states:

> We both had a verbal confrontation. I got riled up and I took a pool [cue] from someone and I am not sure who I took the stick from. Someone then grabbed the stick. I then took up another stick and I struck him . . . in the shoulder and neck region. . . . The stick broke into many pieces. The bartender then came and push me outside. They were holding the White kid inside.[6]

(J.A. 468.) Based on this evidence, a jury found Boston guilty of third degree assault pursuant to 14 V.I.C. § 297(2), using a dangerous weapon during the commission of a crime of violence pursuant to 14 V.I.C. § 2251(a)(2)(B), and simple assault pursuant to 14 V.I.C. § 299(2).[7] Boston, although represented by counsel, timely filed a *pro se* notice of appeal on November 10, 2010.[8]

---

[6] Boston claims that he never made any such admission. He also claims that the statement he signed did not include any admission to hitting Cockayne with a pool cue, and that that portion of the statement must have been added after he had read and signed the statement. He did, however, acknowledge making a statement to Officer Phipps, and confirmed that the signature on the statement was his.

[7] This appeal arises from Boston's second trial. In his first trial, the People charged Boston with first degree murder, second degree murder, third degree assault, using a dangerous weapon during a crime of violence, and simple assault. The jury in that trial found Boston guilty of third degree assault, using a dangerous weapon during a crime of violence, and simple assault. Boston, however, was ultimately granted a new trial because of newly discovered evidence.

[8] Boston was represented by counsel at the time he filed his notice of appeal, and the United States Constitution does not guarantee the right to "hybrid" representation. *See McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984). However, Federal Rule of Criminal Procedure 32, which is made applicable to Superior Court proceedings pursuant

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ Title 4, section 32(a) gives this Court "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." Since the Superior Court's November 23, 2010 Judgment and Commitment constitutes a final judgment, this Court possesses jurisdiction over Boston's appeal. *See, e.g., Browne v. People*, S. Ct. Crim. No. 2010-0069, 2012 V.I. Supreme LEXIS 9, at *6 (V.I. Feb. 2, 2012) (recognizing that in a criminal case, a written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of 4 V.I.C. § 32(a)).

Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). When a defendant challenges the sufficiency of the evidence presented at trial, we must view the evidence in the light most favorable to the People, and affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mendoza*, 55 V.I. at 667. Accordingly, we review a trial court's denial of a Rule 29 motion *de novo. See Stevens v. People*, 52 V.I. 294, 304-05 (V.I. 2009).

### B. Sufficiency of the Evidence

As Boston's sole issue on appeal, he argues that there was insufficient evidence to sustain his conviction for simple assault. He contends that although there was evidence that he chased Cockayne up the street after their altercation in the bar, the People failed to present any evidence that would allow a reasonable jury to conclude that he actually assaulted Cockayne thereafter. To support his argument, Boston points to the fact

---

to Superior Court Rule 7, "creates an exception to the general rule that a criminal defendant may act only through his counsel by providing that '[i]f the defendant so requests, the [C]lerk [of the Court] must immediately prepare and file a notice of appeal on the defendant's behalf.' "*Brown v. People*, S. Ct. Crim. No. 2007-0063, 2010 V.I. Supreme LEXIS 74, at *12 n.8 (V.I. Sept. 27, 2010) (quoting FED. R. CRIM. P. 32(j)(2)). Boston's attorney also filed a timely notice of appeal on November 12, 2010, and an amended notice of appeal on November 16, 2010.

that there were no witnesses to this alleged assault and that the medical examiner was unable to determine when Cockayne sustained his blunt force injuries.

Before addressing the merits of Boston's appeal, this Court notes that Boston was sentenced to four years incarceration for third degree assault (eighteen months suspended) and ten years incarceration for using a dangerous weapon during the commission of a crime of violence (two years suspended, but with a minimum mandatory seven years, six months incarceration), with sentences to be served consecutively. In contrast, he was only sentenced to six months incarceration for his simple assault conviction, which was ordered to be served concurrently with his sentences for third degree assault and using a dangerous weapon during the commission of a crime of violence. Accordingly, even if this Court were to find that there was insufficient evidence to support Boston's conviction for simple assault, its only effect would be to remove a misdemeanor conviction from his record. It would not, however, affect the time of his incarceration or the fines levied upon him. Further, his record would still contain two felonies, one of which constitutes a crime of violence. But since it is a separate conviction and Boston raised this issue in the Superior Court, we will nonetheless consider whether there was sufficient evidence to sustain Boston's conviction for simple assault.

■ To convict a defendant of simple assault under title 14, section 299(2), the People are required to prove that the defendant committed "an assault or battery." Assault is defined as an attempt to commit a battery or "a threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery." *See* 14 V.I.C. § 291. Additionally, "assault and battery" is defined as "any unlawful violence upon the person of another with the intent to injure him." 14 V.I.C. § 292; *Phipps v. People*, 54 V.I. 543, 550 (V.I. 2011). Here, the People have alleged that Boston violated section 299(2) by committing an assault and battery on Cockayne. Accordingly, the People were required to prove that Boston used unlawful violence upon Cockayne with the specific intent to injure him.[9] In determining whether the People presented sufficient evidence to sustain Boston's conviction for simple assault, we will view the evidence

---

[9] The People charged Boston with simple assault under 14 V.I.C. § 11(a), which allowed the People to either prove that he actually committed the assault or that he aided and abetted another to commit the assault.

in the light most favorable to the People. *Mendoza*, 55 V.I. at 666-667. If we conclude that a rational jury could have found the essential elements of the crime beyond a reasonable doubt, we will affirm Boston's conviction. *Id.*

■ On the evening of the alleged assault, Rawlins heard Boston telling people at the bar that he planned on beating Cockayne up for kicking his girlfriend's jeep earlier that day. Later, when Cockayne arrived at the bar, he and Boston were involved in an altercation in which Boston admitted to hitting Cockayne in the shoulder and neck region with a pool cue. Even after this altercation had ended, and Cockayne had left the bar, Boston continued to state that he was going to get even with Cockayne and "kick his ass." Boston then went outside with Thomas, where Thomas picked up a wooden stick. Boston and Thomas then ran up the road in the direction Cockayne had headed.

Around the same time that Rawlins saw Boston and Thomas running away from the bar after Cockayne, Oquendo saw three black males running up the street in the direction of a white male. Oquendo further testified that one of the individuals running up the road was carrying a stick, and that when the three individuals reached the white male, they surrounded him in the street. Sprauve testified that he saw Thomas and another individual chasing Cockayne up the street around the same time Rawlins saw Boston and Thomas run up the road after Cockayne, although he stated that Boston was not the other individual with Thomas. Viewing the testimony of Rawlins, Oquendo, and Sprauve together, a jury could reasonably conclude that Boston was one of the three black males that Oquendo saw chase the white male up the street and surround him in the road, and that the white male was Cockayne.

A jury could also reasonably conclude that Boston assaulted or aided and abetted the assault of Cockayne in the road. Oquendo testified that after presumably Boston, Thomas, and a third individual surrounded Cockayne in the street, the individual holding the stick attempted to strike Cockayne with the stick, but stopped because Oquendo blew her car horn. After looking around, he attempted to strike him again but stopped because Oquendo, again, blew her car horn. After blowing her horn twice, however, Oquendo drove off to alert the authorities, leaving Cockayne in the street still surrounded by the three other individuals. Because she left to alert the authorities, Oquendo was unable to testify as to whether any of the three individuals actually physically assaulted Cockayne. However,

Dr. Landron's examination of Cockayne's body on June 20, 2007, revealed numerous contusions and abrasions on his face, arms, neck, shoulder, and legs, which were consistent with being punched, kicked, or struck with a stick. In particular, Dr. Landron testified that Cockayne had three contusions and one abrasion on his forehead, two contusions on his upper lip, and one abrasion on his check. This is important because several people who had seen Cockayne earlier that evening testified that he looked fine and did not appear to have any injures. Moreover, the altercation between Cockayne and Boston involved Boston striking Cockayne in the shoulder and neck area, not the face. Accordingly, a jury could reasonably infer that Cockayne sustained the multiple abrasion and contusions on his face after his altercation with Boston in the bar.

■ Furthermore, a jury could reasonably infer that Cockayne sustained the multiple abrasions and contusions to his face as a result of being physically assaulted by Boston, Thomas, and the third individual after Oquendo drove away. Oquendo testified that she witnessed three individuals — two of whom the jury could have reasonably inferred were Boston and Thomas — surround another individual — whom the jury could have reasonably inferred was Cockayne — in the street, and that one of the individuals attempted to strike Cockayne with a stick on two occasions, but stopped only because she blew her horn. Oquendo then drove away, leaving Cockayne in the street still surrounded by the three other individuals. Oquendo's testimony establishes that the three individuals who surrounded Cockayne had the specific intent to assault and injure him, but were prevented from doing so because Oquendo blew her car horn. Once Oquendo had driven away, however, it would be reasonable to infer that Boston, Thomas, and the third individual did in fact assault Cockayne, which would constitute "unlawful violence upon the person of another" under section 292. This inference is further supported by the fact that Boston said that he was going to "kick [Cockayne's] ass" a few minutes before he and Thomas chased Cockayne up the street, and approximately twenty minutes after Thomas and Boston ran up the road in the direction Cockayne had headed, Boston returned to the bar sweating heavily, covered in dirt, and acting shaky and nervous. Additionally, there was only a short time span between when Oquendo had driven away and when someone reported that Cockayne had been stabbed. Oquendo stated that the series of events that she witnessed occurred sometime between 11:00-11:30 p.m. The police received a

report of a stabbing, which was later determined to be Cockayne, at 12:20 a.m. There was thus only a small window of time during which Cockayne could have sustained the abrasions and contusions to his face, and it was reasonable for the jury to conclude that the three individuals who were seen attempting to assault Cockayne actually assaulted him after Oquendo had driven away. Therefore, we conclude that there was sufficient evidence to sustain Boston's conviction for simple assault.[10]

## C. Juror Misconduct

In *Thomas v. People*, S. Ct. Crim. No. 2010-0087, 2012 V.I. Supreme LEXIS 40, at *7-8 (V.I. May 2, 2012), Boston's co-defendant Kamal Thomas argued that the trial court erred in denying his motion for a new trial without conducting an evidentiary hearing regarding allegations of possible juror misconduct. For the reasons discussed in that opinion, we held that the Superior Court's decision to deny Thomas's motion for a new trial without conducting even a limited evidentiary hearing regarding juror misconduct was an abuse of discretion. *Id.* 2012 V.I. Supreme LEXIS 40, at *19. We thus remanded Thomas's case to the Superior Court to hold an evidentiary hearing as to potential juror misconduct, to make appropriate findings, and upon those findings to either grant or deny the defendant's motion for a new trial. Although Boston has failed to raise this issue on appeal, we conclude that justice requires that his case also be remanded to the Superior Court for an evidentiary hearing regarding potential juror misconduct.

In *United States v. Olano*, 934 F.2d 1425, 1439 (9th Cir. 1991), *rev'd on other grounds*, 507 U.S. 725, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993), the Court of Appeals for the Ninth Circuit granted a defendant

---

[10] Although the jury could reasonably conclude that Boston was one of the three individuals who surrounded Cockayne on the street, and that at least one of those three individuals physically assaulted Cockayne, there is no evidence that Boston, himself, actually physically assaulted Cockayne. However, under 14 V.I.C. § 11(a), "[w]hoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." And here there is sufficient evidence to establish that even if Boston did not physically assault Cockayne, he certainly aided and abetted whichever of the other two individuals that did assault Cockayne. *See Altamirano v. Gonzales*, 427 F.3d 586, 594 n.8 (9th Cir. 2005) ("The government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted." (quoting *Manual of Model Criminal Jury Instructions for the Ninth Circuit*, § 5.01 (1989))); *see also Nanton v. People*, 52 V.I. 466, 484 (V.I. 2009).

relief from the trial court's error, despite the fact that the defendant failed to raise the issue on appeal, because the disparate treatment of identically situated co-defendants constituted "manifest injustice." There, the trial court violated Federal Rule of Criminal Procedure 24(c) by permitting alternate jurors to be present during the jury's deliberations. *Id.* at 1438. The court held that this error required Olano's convictions to be reversed. *Id* at 1438-39. Olano's co-defendant Gray, however, failed to raise the Rule 24(c) issue in his briefs. The court noted that an appellant is normally held to have waived or defaulted any claims of error not raised on appeal, but reversed Gray's convictions nonetheless because "it would be manifestly unjust to reverse Olano's conviction and not Gray's when both suffered the same prejudice from the same fundamental error in the same trial." *Id.* at 1439. In reaching this conclusion, the court relied on Rule 2 of the Federal Rules of Appellate Procedure, which gives federal courts of appeals the "discretion to suspend the [Federal Rules of Appellate Procedure] for good cause shown, or if a failure to review an issue not properly presented would result in manifest injustice." *Id.* (internal quotation marks omitted). Other courts have also found that the interest associated with complying with appellate procedures is not adequate to warrant treating co-defendants differently on appeal. *See, e.g., United States v. Rivera Pedin,* 861 F.2d 1522, 1526 n.9 (11th Cir. 1988); *United States v. Gray,* 626 F.2d 494, 497 (5th Cir. 1980); *United States v. Anderson,* 584 F.2d 849, 853 (6th Cir. 1978).

We agree with the holding in *Olano,* that the disparate treatment of identically situated co-defendants constitutes manifest injustice. Moreover, Supreme Court Rule 2, which has language almost identical to Rule 2 of the Federal Rules of Appellate Procedure, gives this Court the power to suspend its Rules for good cause. An appellant's failure to raise an issue in an opening brief ordinarily constitutes abandonment or waiver of that issue. *See Bernhardt v. Bernhardt,* 51 V.I. 341, 346 (V.I. 2009); *see also* V.I.S.Ct.R. 22(m). The United States Court of Appeals for the Third Circuit has recognized that this rule serves two related purposes:

> First, it protects the appellee from the prejudice that results from the court's consideration of a late argument to which the appellee ordinarily cannot issue a written response. Second, it promotes the values of our adversarial system by ensuring that the court has heard adequate argument on a particular issue prior to rendering its decision.

*Gambino v. Morris*, 134 F.3d 156, 168-69 (3d Cir. 1998) (Roth, J., concurring). Here, neither of these purposes is adversely affected. The People have had the opportunity to fully brief this exact issue in Thomas's appeal, which is predicated on the same facts from the same trial. Thus, the People have not been prejudiced and this Court has heard adequate argument regarding this issue to render an informed decision. Accordingly, we find that it would be manifestly unjust to remand Thomas's case for a hearing on the issue of jury misconduct and not Boston's, when both suffered the same prejudice from the same fundamental error in the same trial. This matter will therefore be remanded to the Superior Court for an evidentiary hearing regarding juror misconduct.

## III. CONCLUSION

There was sufficient evidence to sustain Boston's conviction for simple assault. In the interest of justice, however, this matter is remanded to the Superior Court for an evidentiary hearing regarding juror misconduct.