**KAMAL THOMAS, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2010-0087

Supreme Court of the Virgin Islands

May 2, 2012

CARL A. BECKSTEDT III, ESQ., Bryant, Barnes, Beckstedt & Blair, LLP, St. Croix, USVI, *Attorney for Appellant.*

TIFFANY V. MONROSE, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

HODGE, *Chief Justice.* Kamal Thomas appeals his convictions for third degree assault, using a dangerous weapon during the commission of a crime of violence, simple assault, and threatening a witness. He contends that the trial court committed reversible error by denying his motion for a new trial without first conducting a hearing to investigate possible juror misconduct. Based on the evidence presented to the trial court, we agree.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

This appeal arises from Thomas's second trial. In his first trial, the People charged him with first degree murder, second degree murder, third degree assault, using a dangerous weapon during a crime of violence, and simple assault for allegedly assaulting and killing James Cockayne in St. John on June 19, 2007. The jury in that trial found Thomas guilty of third degree assault, using a dangerous weapon during a crime of violence, and simple assault. The jury, however, acquitted Thomas on the charges of first and second degree murder. Thomas was later granted a new trial because of newly discovered evidence. At his second trial, Thomas was charged with third degree assault pursuant to 14 V.I.C. § 297(2), using a dangerous weapon during the commission of a crime of violence pursuant to 14 V.I.C. § 2251(a)(2)(B), simple assault pursuant to 14 V.I.C.

649

§ 299(2), and threatening a witness pursuant to 14 V.I.C. § 1510(a)(1) and (2) for allegedly assaulting Cockayne with a wooden stick on June 19, 2007, and subsequently threatening a potential witness to this assault on July 31, 2007.

At Thomas's second trial the People presented evidence that on the evening of June 18, 2007, Anselmo R. Boston, Thomas's co-defendant, was involved in a heated altercation with Cockayne at a bar in St. John for supposedly kicking his girlfriend's jeep earlier that day, and that Boston struck him with a pool cue. At the time of this altercation, witnesses placed Thomas inside the bar with Boston. A few moments after the altercation was over a witness saw Thomas pick up a wooden stick outside the bar, and then run up the street with Boston after Cockayne. At around the same time that the witness from the bar saw Thomas and Boston chasing Cockayne up the street, Leann Oquendo, who was in her car several blocks away, saw three black males running up the road in the direction of a white male.[1] She further stated that one of the individuals running up the road was carrying a wooden stick, and that when the three individuals reached the white male, they surrounded him in the street. The individual holding the stick then attempted to hit the white male with the stick, but stopped because Oquendo blew her car horn. After deterring him from hitting the white male twice by blowing her horn, Oquendo drove away to alert the authorities, leaving the white male in the street still surrounded by the three other individuals.

The People contended that the white male Oquendo saw was Cockayne, and that the individual with the stick was Thomas. The People further contended that after Oquendo drove away to alert the authorities, Thomas and the other two individuals assaulted Cockayne.[2] To support the People's theory that Cockayne was assaulted after Oquendo drove away, the People called Dr. Francisco Landron, a forensic pathologist and medical examiner, who testified that an external examination of Cockayne's body revealed that he had sustained a substantial amount of

---

[1] The evidence at trial indicated that Cockayne was Caucasian, and that Thomas and Boston are African-American.

[2] The People contended that Boston was one of the other two individuals who were seen surrounding Cockayne in the street. Boston was also tried and convicted for his involvement in this alleged assault, but has appealed separately.

blunt force injuries.[3] These injuries manifested themselves in the form of contusions[4] and abrasions,[5] and were visible on Cockayne's face, arms, neck, shoulder, and legs. Dr. Landron further stated that these injuries were consistent with the type of injuries a person could have gotten from being struck with a stick or a piece of wood. Dr. Landron, however, did not testify concerning Cockayne's cause of death. Nor did he suggest that his cause of death was related in any way to his blunt force injuries.[6] Based on this evidence, a jury found Thomas guilty of third degree assault, using a dangerous weapon during the commission of a crime of violence, simple assault, and threatening a witness.

■ On March 26, 2010, two days after the jury returned its verdict, Thomas filed a motion for a new trial. Subsequently, on June 23, 2010, Thomas supplemented his motion for a new trial. In Thomas's supplement to his motion for a new trial, he alleged that juror misconduct deprived him of his constitutional right to fair and impartial jury, and requested a hearing on the matter. On July 1, 2010, the trial court denied Thomas's post-trial motion for an evidentiary hearing regarding juror misconduct, and on November 23, 2010, the trial court entered a written judgment and commitment. Thomas, although represented by counsel, timely filed a *pro se* notice of appeal on November 10, 2010.[7]

---

[3] Dr. Landron explained that blunt force injures are produced by a blunt object, such as a bat, hammer, punch, kick or any type of weapon without a sharp edge. He further indicated that a piece of a board or a stick could cause blunt force injuries.

[4] A contusion is a bruise. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 497 (1993).

[5] An abrasion is an injury that removes the superficial layer of the skin from either scrapping or heavy pressure. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY, at 5.

[6] The People did not present any evidence directly implicating Thomas in Cockayne's death. The record only indicates that Cockayne died from a stabbing that occurred in St. John at approximately 12:20 a.m. on June 19, 2007.

[7] Thomas was represented by counsel at the time he filed his notice of appeal, and the United States Constitution does not guarantee the right to "hybrid" representation. *See McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984). However, Federal Rule of Criminal Procedure 32, which is made applicable to Superior Court proceedings pursuant to Superior Court Rule 7, "creates an exception to the general rule that a criminal defendant may act only through his counsel by providing that '[i]f the defendant so requests, the [C]lerk [of the Court] must immediately prepare and file a notice of appeal on the defendant's behalf." *Brown v. People*, S. Ct. Crim. No. 2007-0063, 2010 V.I. Supreme LEXIS 74, at *13 n. 8 (V.I. Sept. 27, 2010) (quoting FED. R. CRIM. P. 32(j)(2)).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Title 4, section 32(a) of the Virgin Islands Code gives this Court "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." Since the Superior Court's November 23, 2010 Judgment and Commitment constitutes a final judgment, this Court possesses jurisdiction over Thomas's appeal. *See, e.g., Browne v. People*, S. Ct. Crim. No. 2010-0069, 2012 V.I. Supreme LEXIS 9, at *6 (V.I. Feb. 2, 2012) (recognizing that in a criminal case, a written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of 4 V.I.C. § 32(a)).

Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). When a defendant challenges the trial court's decision not to conduct a hearing on the issue of juror misconduct, we review for abuse of discretion. *See Government of the V.I. v. Weatherwax*, 20 F.3d 572, 578, 29 V.I. 410 (3d Cir. 1994).

### B. The Trial Court's Decision not to Conduct an Evidentiary Hearing

Thomas argues that the trial court erred in denying his motion for a new trial without conducting an evidentiary hearing regarding allegations of possible juror misconduct. In Thomas's supplement to his motion for a new trial, he alleges that juror misconduct deprived him of his constitutional right to fair and impartial jury. To support this allegation he attached the affidavit of Attorney Michael A. Joseph — his legal counsel at the time — which states that one of the jurors, who Attorney Joseph refers to as "Juror A,"[8] contacted Attorney Joseph after the trial and informed him that "[t]he jurors had their minds made up from the time we went back in the jury room right after being selected." (J.A. 80-81.) According to Attorney Joseph, Juror A stated that one of the other jurors

---

[8] In his affidavit, Attorney Joseph indicated that he was withholding the names of the jurors because he wanted to preserve the trial court's decision whether any subsequent evidentiary hearing would be conducted *in camera.*

in the case had informed the members of the jury that "[t]hose guys killed the [w]hite boy and got away with it and we have to teach them a lesson." Juror A further stated that every time there was a break during the trial other jurors would openly discuss how the defendants had killed the white boy, and that they were going to convict the defendants. Juror A informed Attorney Joseph that she wanted to talk to the judge about these events, but did not want to write a letter.[9] Based on this information, Thomas requested that the trial court hold an evidentiary hearing to determine whether this alleged juror misconduct warranted a new trial.

The trial court, however, denied Thomas's request to hold an evidentiary hearing.[10] In reaching this conclusion, the trial court held that Federal Rule of Evidence 606(b) precluded it from inquiring "into the validity of a verdict and/or statements made by jurors occurring either before or during jury deliberations." (J.A. 90.) The trial court also determined that even if it was permitted to inquire into possible juror misconduct under Rule 606(b), Attorney Joseph's affidavit was wholly insufficient to trigger such an inquiry. In making this determination, the trial court deduced the identity of "Juror A" and noted that because of her "conflict of interest or bias, the validity of her reported contentions are questionable, at best." (J.A. 88.) It further noted that ninety days had passed since the jury returned its verdict and Juror A had neither executed a sworn affidavit nor contacted the Superior Court regarding these allegations.

■ To begin, the trial court incorrectly concluded that Rule 606(b) precluded it from further investigating the allegations in Thomas's supplement to his motion for a new trial.[11] At the time this issue was before the Superior Court, Rule 606(b) provided in pertinent part:

---

[9] The People filed an opposition to Thomas's motion for a new trial on June 24, 2010. In that motion, the People argue that conducting an evidentiary hearing regarding Juror A's allegations would be improper under Federal Rule of Evidence 606(b) because the allegations do not allege that the jury was influenced by any extraneous prejudicial information.

[10] It also ultimately denied his motion for a new trial.

[11] We recognize that at the time of Thomas's trial in March 2010, "the 1953 version of the Uniform Rules of Evidence ('URE'), codified as 5 V.I.C. §§ 771-956, appl[ied] to evidentiary issues in local Virgin Islands Courts." *Blyden v. People*, 53 V.I. 637, 658 & n.15 (V.I. 2010), *aff'd*, 437 Fed. Appx. 127, 128 (3d Cir. 2011). However, on April 7, 2010, prior to Thomas filing his supplement to his motion for a new trial — which alleged juror misconduct and requested an evidentiary hearing on the matter — and the Superior Court's subsequent order denying Thomas's request for an evidentiary hearing, the Governor signed

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.[12]

This rule, however, provided for three exceptions in terms comparable to those presently in effect. "[A] juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying." Rule 606(b) thus allows inquiry into extraneous information or outside influences brought to bear upon jurors, but does not permit impeachment of verdicts by having a juror "testify about his mental processes or about the effect of anything upon his or another juror's mind as influencing him to assent to or dissent from a verdict or indictment." *Georges v. Government of the V.I.*, 986 F. Supp. 323, 327, 38 V.I. 159 (D.V.I. App. Div. 1997).

■ The extent of the inquiry permitted by Rule 606(b) was explored by the United States Court of Appeals for the Eighth Circuit in *United States v. Swinton*, 75 F.3d 374 (8th Cir. 1996). In *Swinton*, the defendant was convicted of bank fraud. *Id.* at 376. Following trial, one of the jurors

---

into law, Act No. 7161, section 15 of which repealed the local URE and replaced it with the Federal Rules of Evidence. Accordingly, since Thomas did not request an evidentiary hearing concerning juror misconduct until after the URE had been repealed, the Superior Court properly applied the Federal Rules of Evidence.

[12] On December 1, 2011, Rule 606(b) was amended. It now states:

During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

The Advisory Committee Notes clearly state, however, that that the purpose of the 2011 Amendment was to restyle the Evidence Rules "to make them more easily understood and to make style and terminology consistent throughout the rules." The Advisory Committee Notes further state that "[t]hese changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility."

contacted the defendant and informed him that during jury deliberations, someone stated that the defendant had a criminal record. *Id.* at 380. However, there was no evidence introduced at the trial that contained any mention of the defendant's criminal history. *Id.* Defense counsel filed motions requesting that he be allowed to discuss the matter with the jurors and for a new trial based upon the jury considering extrinsic evidence. *Id.* The trial court denied these motions, holding that the juror's alleged statement was not "extraneous" within the meaning of Rule 606(b) because any discussion or speculation about the prior conviction would have originated within the jury room and not from an extraneous source. *Id.* The United States Court of Appeals for the Eighth Circuit disagreed. The court noted that

> [e]xtrinsic or extraneous influences include publicity received and discussed in the jury room, matters considered by the jury but not admitted into evidence, and communications or other contact between jurors and outside persons. Extrinsic or extraneous influences may be grounds for impeaching a verdict. Discussion of a prior conviction which was not introduced at trial fits the category of matters considered by the jury but not admitted into evidence.

*Id.* at 381 (internal quotation marks omitted). The court thus held that the juror's statement was "extraneous prejudicial information" within the meaning of Rule 606(b), and that the jury's consideration of one juror's assertion that the defendant had prior convictions, despite the lack of evidence of such prior convictions, warranted an evidentiary hearing.[13] *Id.*

■ Here, Thomas has alleged that one of the jurors informed the jury panel that Thomas and Boston had killed Cockayne and gotten away with it. There was no evidence presented at trial, however, to suggest that either of the defendants were involved in Cockayne's death, much less

---

[13] The court's holding in *Swinton* is consistent with how other courts have interpreted Rule 606(b). *See United States v. Humphrey*, 208 F.3d 1190, 1197-98 (10th Cir. 2000) (recognizing that a juror's statement involving information not introduced at trial could qualify as extraneous prejudicial information under Rule 606(b)); *Isaacs v. Kemp*, 778 F.2d 1482, 1484-85 (11th Cir. 1985) (same); *United States ex rel. Owen v. McMann*, 435 F.2d 813, 818-20 (2d Cir. 1970) (same); *United States v. Felton*, 239 F. Supp. 2d 122, 128-29 (D. Mass. 2003) (same); *Cocconi v. Pierre Hotel*, 146 F. Supp. 2d 427, 429-30 (S.D.N.Y. 2001) (same).

that they had gotten away with killing him.[14] Juror A's alleged statement that Thomas and Boston had gotten away with killing Cockayne would thus constitute extraneous information — a matter considered by the jury but not admitted into evidence. Accordingly, Federal Rule of Evidence 606(b) did not prohibit the trial court from holding an evidentiary hearing to determine whether this extraneous information was improperly brought to the jury's attention, and, if so, whether it affected the verdict.

■■ The trial court also incorrectly concluded that Attorney Joseph's affidavit was wholly insufficient to warrant an evidentiary hearing on whether extraneous prejudicial information was improperly brought to the jury's attention. Although a trial court's "decision as to how to proceed in response to allegations of juror misconduct or bias will not be reversed absent an abuse of discretion," *United States v. Youts*, 229 F.3d 1312, 1320 (10th Cir. 2000), "[i]f there is reason to believe that jurors have been exposed to prejudicial information, the trial judge is obliged to investigate the effect of that exposure on the outcome of the trial." *United States v. Console*, 13 F.3d 641, 669 (3d Cir. 1993) (internal quotation marks omitted). Allegations of juror misconduct implicate grave interests, and "the Supreme Court has stressed that the remedy for [such] allegations . . . is a *hearing* in which the trial court determines the circumstances of what transpired, the impact on the jurors, and whether or not it was prejudicial." *United States v. Angulo*, 4 F.3d 843, 847 (9th Cir. 1993) (citing *Remmer v. United States*, 347 U.S. 227, 229-30, 74 S. Ct. 450, 98 L. Ed. 654, 1954-1 C.B. 146 (1954)). However, there is no obligation for the trial judge to conduct an evidentiary hearing when no legitimate foundation has been established.[15] *See Console*, 13 F.3d at 669; *see also*

---

[14] In fact, it appears that the trial court prohibited the People from introducing evidence implicating Thomas and Boston in Cockayne's death.

[15] When non-frivolous allegations of juror misconduct, such as exposure to extraneous prejudicial information, arise *during trial*, the trial court should ordinarily undertake an inquiry into the alleged misconduct. *See United States v. Bradshaw*, 787 F.2d 1385, 1390 (10th Cir. 1986); *Government of the V.I. v. Dowling*, 814 F.2d 134, 138 (3d Cir. 1987) ("Where there is affirmative reason to believe that a member or members of the jury may have learned extrarecord information about the underlying facts of the case or irrelevant prior conduct of the defendant that has a potential for adversely affecting the jury's ability to impartially decide the case on the record evidence alone, the trial court has a duty to determine whether the trial should be aborted or whether the jury, with proper instructions, can be relied upon to judge impartially and to confine its deliberations to the record evidence."), *aff'd*, 493 U.S. 342, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990); *see also Dowdye v. People*, 55 V.I. 736, 759

*United States v. Stewart*, 433 F.3d 273, 306 (2d Cir. 2006) ("[A]n evidentiary hearing is not held to afford a convicted defendant the opportunity to conduct a fishing expedition."). In determining whether an evidentiary hearing is necessary, a trial court "should consider numerous factors, including 'the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source.' " *United States v. White Bull*, 646 F.3d 1082, 1095 (8th Cir. 2011) (quoting *Angulo*, 4 F.3d at 847).

██ The trial court's July 1, 2010 Order clearly indicates to us that its decision to deny Thomas's motion for an evidentiary hearing was due, at least in part, to questions about the credibility of the source.[16] The trial court deduced the identity of "Juror A" and noted that because of that juror's "conflict of interest or bias, the validity of her reported contentions are questionable, at best." It further noted that Juror A had neither executed a sworn affidavit nor contacted the Superior Court regarding these allegations, and that the only evidence of juror misconduct was the affidavit of Attorney Joseph, which contained double hearsay. The trial court, however, failed to provide any explanation as to how it was able to determine Juror A's identity.[17] Nor did the trial court state what conflict of interest called into question the validity of her allegations.[18] And while we agree that a signed affidavit from Juror A would have been preferable, denying Thomas's motion for a new trial without conducting even a

---

(V.I. 2011). However, when similar allegations arise *after trial* — as is the case here — the defendant must produce more than merely non-frivolous allegations in order to warrant a hearing. *See United States v. Gilsenan*, 949 F.2d 90, 96-98 (3d Cir. 1991) (distinguishing cases where allegations that the jury was exposed to extraneous prejudicial information arose after trial as opposed to during trial and explaining that "[i]t is qualitatively a different thing to conduct a voir dire during an ongoing proceeding at which the jury is part of the adjudicative process than to recall a jury months or years later for that purpose").

[16] Although the trial court relied mainly on Rule 606(b) in its July 1, 2010 Order denying Thomas's motion for an evidentiary hearing, it also stated that even if it was permitted to inquire into possible juror misconduct under Rule 606(b), Attorney Joseph's affidavit was wholly insufficient to trigger such an inquiry.

[17] Instead, the trial court simply stated that "[i]f the Court's deductions are accurate, Juror A is Alternate Juror #1 A.H." (J.A. 88.) (internal quotation marks omitted) (emphasis removed).

[18] While the trial court did state that the person whom it believed to be Juror A had given several inconsistent responses on her Juror Qualification Questionnaire Form regarding her education and marital status, it failed to explain why these inconsistencies would make her statement completely unreliable.

limited evidentiary hearing regarding jury misconduct was an abuse of discretion.

■ First, the trial court was presented with specific allegations of jury misconduct, which if substantiated, could potentially require a new trial. *See Government of the V.I. v. Dowling*, 814 F.2d 134, 138 (3d Cir. 1987) ("Information about prior criminal convictions or activities is the kind of information that carries great potential for prejudicing the jury."), *aff'd*, 493 U.S. 342, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990). Second, an inquiry into these allegations could have been limited to whether extraneous prejudicial information was improperly brought to the jury's attention, which would comply with the requirements of Federal Rule of Evidence 606(b). *Swinton*, 75 F.3d at 380-81. Finally, although it may not be the most credible piece of evidence, Attorney Joseph's affidavit was given by an officer of the court under oath and penalty of perjury. *Contra Henry v. Dennery*, 55 V.I. 986, 994 (V.I. 2011) (holding that unsworn representations of an attorney are not evidence). Attorney Joseph's affidavit further quotes Juror A and specifically states that he has read the applicable portions of the affidavit to Juror A telephonically and that Juror A verified its accuracy. It also indicates that Juror A is willing to come forward and discuss these allegations with the trial court, presumably under oath at a hearing. Based on these factors, the trial court should have, at a minimum, held a limited evidentiary hearing to allow Juror A to testify whether any extraneous prejudicial information was improperly brought to the jury's attention.

■ In response to allegations of jury misconduct, the trial court should: "ascertain whether the misconduct actually occurred; if it did, determine whether it was prejudicial; and if there are no grounds for a new trial, specify the reasons it decided that misconduct did not occur, or occurred but was non-prejudicial." *United States v. Resko*, 3 F.3d 684, 691 (3d Cir. 1993). Here, the trial court's failure to conduct even a limited evidentiary hearing to determine whether the alleged misconduct actually occurred was an abuse of discretion. We therefore remand this matter to the Superior Court to hold an evidentiary hearing as to potential juror

misconduct, to make appropriate findings, and upon those findings decide to either grant or deny the defendant's motion for a new trial.[19]

## III. CONCLUSION

The Superior Court's decision to deny Thomas's motion for an evidentiary hearing on possible juror misconduct was an abuse of discretion. This matter is therefore remanded to the Superior Court for an evidentiary hearing.

---

[19] Thomas also raises an ineffective assistance of counsel argument. He claims that his trial counsel's failure to follow the proper steps under Local Rule of Civil Procedure 47.1(B) before contacting a member of the jury, as well as trial counsel's failure to promptly notify the court of potential jury misconduct constituted ineffective assistance of counsel. Our decision to remand this matter for an evidentiary hearing, however, renders this argument moot.