IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 3, 2007

Charles R. Fulbruge III
Clerk

No. 06-30878
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

KEITH ROMAN HENDERSON; LIONEL JOSEPH HENDERSON

Defendants-Appellants

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 6:05-CR-60040

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Keith Roman Henderson challenges his conviction and sentence. Lionel Joseph Henderson challenges his sentence. Keith Henderson's conviction and both defendants' sentences are AFFIRMED.

## I. FACTS AND PROCEEDINGS

On July 13, 2005, Keith Henderson and Lionel Henderson were indicted on one count of violating 21 U.S.C. § 846, conspiracy to distribute cocaine, and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

two counts of violating 21 U.S.C. § 841(a)(1), distribution of cocaine base. The government subsequently filed an information of prior conviction against Lionel Henderson, asserting that he was subject to an enhanced penalty under 21 U.S.C. § 841(b)(1) because of two prior state felony drug convictions. In a superseding indictment, both defendants were charged with an additional count of cocaine distribution in violation of 21 U.S.C. § 841(a)(1), and Lionel Henderson was charged with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

Before trial, Keith Henderson filed a motion to require the government to reveal any deals or promises of leniency or immunity or any other consideration provided to its informant. The government asserted that there were no promises of leniency or plea agreements between the informant and any office or agency of the United States.

At trial, the jury heard that James Legarde met the Hendersons in 2003 through a drug dealer known as "B.G." B.G. bought crack cocaine from the Hendersons in "Friendship Alley", a dead-end street in Amelia, Louisiana known for drug-trafficking and hostility towards the police. Legarde began buying drugs from the Hendersons. The transactions were typically set up in advance over the telephone. Legarde most often dealt with Keith Henderson, but, throughout his relationship with the Hendersons, he would call Lionel Henderson if he could not contact Keith Henderson. Legarde began cooperating with law enforcement, entering into a confidential source agreement with the Drug Enforcement Administration ("DEA"). While Legarde had an extensive criminal history, he had no pending felony charges. There were pending state misdemeanor charges of domestic abuse against Legarde. Terrebonne Parish Sheriff's Office narcotics agent Bert Hanlon contacted the Terrebonne Parish District Attorney's Office where the charges were pending and asked that they be continued until the DEA investigation was complete. He later sent a letter

requesting that Legarde's cooperation be taken into consideration by the Terrebonne Parish District Attorney's Office, but he did not request that the pending misdemeanor charges be dismissed. The charges were not dismissed.

On March 2, 2005, at the DEA's instruction, Legarde contacted Keith Henderson, who told him to come to Friendship Alley. When Legarde arrived with an undercover officer, Lionel Henderson approached the vehicle and told Legarde that Keith Henderson was not available. Legarde purchased crack cocaine from Lionel Henderson, although the transaction was not completed in the presence of the undercover officer. The officer was told by another individual to stay in the vehicle, because Lionel Henderson was apprehensive about his presence. The crack cocaine purchased by Legarde in that transaction weighed 128.3 grams. The drug transaction was recorded using a digital recorder worn by Legarde. Keith Henderson called Legarde after the transaction and told him not to bring the second individual with him in the future.

On March 17, 2005, under the supervision of the DEA, Legarde contacted Keith Henderson to arrange another drug purchase. Keith Henderson told him that "everything was good." When Legarde arrived at Friendship Alley, wearing a transmitter provided by the DEA, Keith Henderson approached his car. Shortly thereafter, agents heard over the transmitter an unknown individual state that a "strike force" vehicle was parked across the street and comment about a helicopter being in the area. Legarde observed Keith Henderson look into the sky at the helicopter, get into a car, and leave the area. Agents then observed Keith Henderson driving through the area conducting what they believed to be counter-surveillance. Several minutes later, Keith Henderson returned to meet Legarde and sold what was later determined to be 124.9 grams of crack cocaine.

On July 13, 2005, under the direction of the DEA, Legarde called Keith Henderson about purchasing more drugs. Keith Henderson told him that Lionel

Henderson would conduct the transaction. Legarde traveled to Friendship Alley and purchased what was later determined to be 46.6 grams of crack cocaine from Lionel Henderson. The transaction was recorded using a video camera. Lionel Henderson was arrested in Friendship Alley after the transaction. After being advised of his Miranda rights and asked if he had anything dangerous on him, he stated that he had sold everything. Keith Henderson was arrested at his residence, which was in a different parish than Friendship Alley. After being advised of his Miranda rights, he was interviewed and admitted that he was only a small-time dealer.

During direct examination, Hanlon testified that he developed Legarde as an informant by building a drug distribution case against him. He then offered Legarde the option of operating as an informant, and in return he agreed not to refer his case for prosecution. Hanlon also testified that he had contacted the district attorney's office to have Legarde's misdemeanor charges continued, and that he had written a letter to the district attorney's office regarding Legarde's assistance. He acknowledged this again on cross-examination. After the defense objected to the government's failure to disclose the letter Hanlon wrote to the district attorney, the district court instructed the government to locate the letter and an email message government's counsel had received from the DEA case agent. The email described the DEA case agent's attempt to determine the status of Legarde's cases, not to influence them. The DEA case agent was unaware of Hanlon's actions until Hanlon testified at trial. After his testimony, Hanlon remained under subpoena in case he was needed for additional testimony. He was not recalled by the government or the defense.

Legarde testified the same day as Hanlon. During a break, the government produced the letter Hanlon had written to the district attorney's office. It was disclosed to the defense. The applicable portion of the letter was as follows: "I am requesting any assistance available for Mr. Lagarde [sic] and

have been in contact with [DEA] Agent Larry Johnson who also extends his request for assistance in Mr. Lagarde's upcoming court date." The court provided the defense with an opportunity to review the one-page letter before continuing their cross-examination of Legarde and allowed them the opportunity to recall Hanlon. The defense resumed cross-examination of Legarde after a short break. They did not request a continuance. Legarde was questioned about Hanlon's actions regarding the misdemeanor charges against him. Legarde testified that the charges were irrelevant to his cooperation because they were misdemeanors, and that he did not ask Hanlon to make any calls on his behalf. Legarde was also questioned about his convictions for manslaughter, simple robbery, burglary, distribution of cocaine, and possession of heroine. Legarde was recalled by the government the following day to testify about drug transactions.

An assistant district attorney from Terrebonne Parish District Attorney's Office testified about the misdemeanor domestic abuse charges against Legarde. The trial date for the first charge was continued without date because the victim did not appear in court. The second charge was originally declined because of insufficiency of evidence, but the charge was re-instituted when the screening attorney saw that there was another charge pending. The victim did not appear for the trial of the second charge either, and that charge was continued until August 2006, over three months after the Hendersons' trial. The assistant district attorney testified that the charges were not continued because of any law enforcement agency's request. He testified that the office had a policy against dropping domestic abuse charges and would not have dropped them for assisting the police.

At the close of the government's case, the Hendersons both moved for a judgment of acquittal. Their motion was denied as to counts one through three, the conspiracy charge and the drug distribution charges for March 2, 2005 and

March 17, 2005. Their motion was reserved as to counts four through six, the drug distribution charge for July 13, 2005 and the firearm charges against Lionel Henderson. The jury convicted both defendants of counts one and two and convicted Keith Henderson of count three. The jury acquitted the defendants of the remaining counts. Keith Henderson moved for a judgment of acquittal as to count three, asserting that there was insufficient evidence to sustain his conviction.

Before sentencing, Keith Henderson filed no objections to the Pre-Sentence Report ("PSR") which calculated that he had participated in the distribution of 11.76 kilograms of cocaine base. His base offense level was thirty-eight. Of the 11.76 kilograms of cocaine base attributable to Keith Henderson, 11.34 kilograms were determined by taking into consideration Legarde's assertion that he had purchased two ounces of cocaine base from Keith Henderson on approximately 200 occasions from April 2003 to February 2005, when Legarde began assisting law enforcement. Lionel Henderson filed two objections to his PSR and responded to the government's information on prior convictions by asserting that his two prior convictions were obtained in violation of the Constitution of the United States and were not felony drug offenses for the purposes of 21 U.S.C. § 841. At the sentencing hearing, Lionel Henderson's counsel conceded that the two prior drug convictions satisfied the definition provided in 21 U.S.C. § 802 but objected to preserve the issue for appeal. The district court found that the 21 U.S.C. § 841 (b)(1) enhancement was applicable to Lionel Henderson and sentenced him to two concurrent mandatory-minimum terms of life imprisonment. The court sustained his objections to his Sentencing Guidelines calculation, although it had no effect on his sentence. Keith Henderson was sentenced to 292 months each on all three counts of conviction, to be served concurrently. The court denied his motion for judgment of acquittal as to count three.

Both defendants filed timely notices of appeal. Keith Henderson claims that the district court erred in failing to grant a new trial after the government failed to disclose Brady material. He also claims that the district court erred in denying his judgment of acquittal as to count two, and that it erred in adopting the PSR, which held him accountable for 11.76 kilograms of cocaine base. Lionel Henderson claims that the district court erred in finding that his state felony convictions for mere possession of cocaine qualified as felony drug offenses for the purposes of the enhancement under 21 U.S.C. § 841(b)(1)(A). He argues that the court subsequently erred in sentencing him to life imprisonment. He concedes this argument is foreclosed by circuit precedent and raises it to preserve it for further review.

## II. DISCUSSION

A.    Failure to grant a new trial for Brady error

"We review a district court's Brady determinations de novo." United States v. Runyan, 290 F.3d 223, 245 (5th Cir. 2002). "We review Brady determinations using a three part test under which a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment." United States v. Martin, 431 F.3d 846, 850 (5th Cir. 2005) (internal quotations omitted).

Keith Henderson argues that the government suppressed a document detailing actions it took to assist Legarde regarding his pending charges. He does not specifically identify which document was suppressed and appears to refer to both an email between a DEA agent and an assistant U.S. Attorney and a letter from a Terrebonne Parish narcotics agent to the parish district attorney's office.

We first look to see if the evidence was suppressed. Without deciding whether the email was discoverable, we note that the contents of the email were disclosed to the defense over a month before trial in a letter from the government

to defense counsel dated March 9, 2006. All the relevant information from the email was disclosed in the letter. Hanlon's letter to the district attorney's office was disclosed at trial during a break in Legarde's cross-examination.

Evidence turned over during trial is not considered suppressed for Brady purposes. United States v. Williams, 132 F.3d 1055, 1060 (5th Cir. 1998). Therefore, neither the email nor the letter were suppressed. "Under these circumstances, the court looks to whether [the defendant] was prejudiced by the tardy disclosure." Id.; see also United States v. Neal, 27 F.3d 1035, 1050 (5th Cir. 1994), United States v. McKinney, 758 F.2d 1036, 1050 (5th Cir. 1985).

Henderson makes no argument as to how he was prejudiced by the disclosure of the information in the email through the government's letter four weeks before trial. This court has previously held that there is no Brady violation where the government disclosed evidence four weeks before trial, giving the defense time to investigate and put information to effective use at trial. United States v. Walters, 351 F.3d 159, 169 (5th Cir. 2003). The email describes a DEA agent's research into the status of misdemeanor charges against an informant, not any attempts to influence the office prosecuting the informant. Keith Henderson suffered no prejudice from the disclosure of the contents of the email in a separate letter four weeks before trial.

The existence of Hanlon's letter, which simply "request[ed] any assistance available," was disclosed in front of the jury during Hanlon's testimony. During his testimony, Hanlon described in great detail the actions he took regarding the pending charges against Legarde. There were no discrepancies between his testimony and the letter, which was less detailed than his testimony. The defense had the opportunity to review the one-page letter and hear Hanlon's testimony before completing its cross-examination of Legarde, the only witness to whom the letter was relevant. After the letter was disclosed, the defense questioned Legarde about Hanlon's actions regarding the misdemeanor charges.

This court has held that the disclosure of reports after cross-examination has begun does not violate Brady where the defense is able to review the reports in time to conduct an effective cross-examination. United States v. O'Keefe, 128 F.3d 885, 898–99 (5th Cir. 1997). While Keith Henderson did not have the same amount of time to review the tardily disclosed reports as the defendant in O'Keefe, there is no reason to suggest that Keith Henderson was prejudiced by the late disclosure. He had the opportunity to review the one page letter before resuming cross-examination of Legarde. The most damaging information about Hanlon's actions had been disclosed by Hanlon on the witness stand that morning. The defense was able to challenge Legarde on cross-examination about Hanlon's actions regarding the pending misdemeanor charges. Finally, both defense attorneys conducted effective cross-examinations of Legarde, particularly with regard to his criminal history. In light of Legarde's lengthy criminal history and Hanlon's testimony that he did not refer Legarde for prosecution in return for his cooperation, Hanlon's letter was of minimal use to the defense. The defense had the opportunity to seek further cross-examination or recall Hanlon to the stand, but they did not. Keith Henderson suffered no prejudice from the government's tardy disclosure of Hanlon's letter.

B.     Sufficiency of the evidence

"We review de novo the district court's denial of a properly preserved motion for judgment of acquittal." United States v. Fuchs, 467 F.3d 889, 904 (5th Cir. 2006). "In reviewing the sufficiency of the evidence, we view the evidence and all inferences to be drawn from it in the light most favorable to the verdict to determine if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Burton, 126 F.3d 666, 669 (5th Cir. 1997). Count two of the superseding indictment charged that, on or about March 3, 2005, Keith Henderson and Lionel Henderson aided and abetted each other in the distribution of more than fifty grams of crack cocaine in

violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A), and 18 U.S.C. § 2. "To prove the aiding and abetting of cocaine distribution, the government must show that (1) the defendant associated in the criminal venture, (2) participated in the venture, and (3) sought by action to make the venture succeed." United States v. Roberts, 913 F.2d 211, 217 (5th Cir. 1990).

Keith Henderson claims that there was insufficient evidence to convict him of count two of the indictment. He argues that since he was not present during the actual delivery of drugs which occurred between Legarde and Lionel Henderson, he could not be convicted of the offense.

The jury heard that Legarde contacted Keith Henderson on March 2, 2005 and that Keith Henderson told him to come to Friendship Alley. The jury also heard that, when Legarde and an undercover officer arrived to conduct the transaction, Lionel Henderson explained to them that Keith Henderson was unavailable. Lionel Henderson proceeded to sell 128.3 grams of cocaine base to Legarde. The transaction was recorded using a digital recorder. Legarde testified that he normally contacted Keith Henderson to arrange drug transactions and that Lionel Henderson would provide drugs for him when Keith Henderson was unable to provide them to him. A few minutes after the transaction, Keith Henderson called Legarde and told him not to bring his companion with him to future transactions because Lionel Henderson was leery of having a new individual present.

Keith Henderson's presence at Friendship Alley is not required for a conviction. A rational trier of fact could have found that Keith Henderson was associated with the drug transaction that occurred there on March 2, 2005 and that he participated in the venture and sought to make the venture succeed. His telephone conversation wherein he told Legarde to come to Friendship Alley contributed directly to the success of the transaction that day. His conversation after the transaction indicated his participation in the transaction and a general

interest in the success of the drug transactions with Legarde. His admission that he was a small-time dealer was further evidence that would allow a rational trier of fact to conclude that Keith Henderson had aided and abetted the distribution of cocaine on March 2, 2005.[1]

C.    Adoption of the PSR drug quantity

We "review the district court's interpretation and application of the [Sentencing] Guidelines de novo and its factual determinations for clear error." United States v. Rodriguez-Mesa, 443 F.3d 397, 401 (5th Cir. 2006). Any amount of cocaine base greater than 1.5 kilograms results in a base offense level of thirty-eight. U.S.S.G. § 2D1.1(c)(1). Keith Henderson challenges the district court's adoption of the PSR's determination that he was responsible for 11.76 kilograms of cocaine base. He claims the PSR relied on the "uncorroborated testimony of the impeached and discredited CI, James Legarde."

Keith Henderson made no objections to the PSR. If a defendant does not object to portions of the PSR and provides no evidence in rebuttal, "the district court [is] certainly free to adopt the findings of the [PSR] without more specific inquiry or explanation." United States v. Mueller, 902 F.2d 336, 346 (5th Cir. 1990). Furthermore, a review of the record shows that the district court did not err in adopting the factual determinations of the PSR. Keith Henderson argues that his acquittal on count four, which was the drug distribution charge related to July 13, 2005, indicates that the jury questioned Legarde's credibility. However, the jury convicted the Hendersons of drug distribution in counts two and three, where the net weight of the cocaine base was determined to be 128.3 grams and 124.9 grams, respectively. The most plausible explanation for the acquittal on count four is that the net weight of the cocaine base was 46.6 grams,

---

[1] The indictment charges the Hendersons with cocaine distribution on or about March 3, 2005. The discrepancy between the date in the indictment and the date in the trial testimony was the result of a typographical error in an investigative report.

under the fifty grams required for conviction. There is no basis in the record to question the district court's and the PSR's reliance on Legarde in determining drug quantity, particularly since the PSR's calculated amount of 11.76 kilograms was 10.25 kilograms more than necessary to assess Keith Henderson with the same base offense level.

D.    Sentence enhancement under 21 U.S.C. § 841(b)(1)(A)

Lionel Henderson argues that the district court erred in sentencing him to life imprisonment pursuant to the enhancement provisions of 21 U.S.C. § 841(b)(1)(A) because of his two prior state felony convictions for mere possession of cocaine. He concedes that this issue is foreclosed by circuit precedent, United States v. Sandle, 123 F.3d 809, 812 (5th Cir. 1997), and raises it to preserve it for further review. In light of circuit precedent, the district court did not err in sentencing Lionel Henderson to two concurrent terms of life imprisonment.

## III. CONCLUSION

Keith Henderson's conviction is AFFIRMED. Keith Henderson's and Lionel Henderson's sentences are AFFIRMED.