**JALANI WILLIAMS, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2012-0028

Supreme Court of the Virgin Islands

November 5, 2013

1025

CHARLES E. LOCKWOOD, ESQ., Nichols, Newman, Logan & Grey, P.C., St. Croix, USVI, *Attorney for Appellant*.

BERNARD M. VANSLUYTMAN, ESQ., Solicitor General, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(November 5, 2013)

HODGE, *Chief Justice*. Jalani Williams appeals from the Superior Court's May 17, 2012 Judgment and Commitment, which adjudicated him guilty of first-degree murder and various other offenses. For the reasons that follow, we affirm his convictions, but remand the matter for re-sentencing.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

The People of the Virgin Islands charged Jalani and his two co-defendants, Joh Williams and Khareem Hughes,[1] with numerous offenses — including first-degree murder — stemming from an event that took place on the early morning of August 2, 2009, when a shooting erupted near a restaurant parking lot and a nearby gas station on St. Croix. Almonzo Williams, who was shot thirteen times, died shortly after being transported from the scene, while Lester Roberts and Kamal Lewis sustained gunshot wounds, but survived their injuries.

Shortly after the shooting, a police officer, Orlando Benitez, observed an individual — later identified as Khareem — slowly driving a vehicle away from the restaurant, and saw another man — who he later identified as Jalani — jump into the vehicle through the passenger window, at which point the vehicle sped away. Benitez pursued the vehicle, and a high-speed chase ensued, resulting in Khareem's car speeding through a police roadblock and colliding with a truck. Although Khareem and Jalani fled on foot, another officer, Jose Ramos, apprehended Khareem, while Benitez apprehended Jalani. Two firearms, including a .380 caliber Bersa, were recovered from Jalani's person, and a .380 caliber unexpended

---

[1] Because many of the individuals involved in this case possess the same last names, we refer to them by their first names to minimize confusion.

1028

cartridge was found in his pocket. Later that night, Arkiesa Hughes and Lynell Hughes — Khareem's aunts — voluntarily arrived at the police station, and spoke with Richard Matthews, a police detective. According to Matthews, both women identified Joh as the shooter. Matthews interviewed Lynell again on October 7, 2009, who told him that immediately before the shots were fired, Khareem had told her to leave the area, and that she had also seen Jalani shoot Almonzo. Similarly, when Matthews interviewed Arkiesa for a second time on November 13, 2009, she identified Jalani from a photo array, and told him that she saw Khareem hanging out with Joh and Jalani shortly before the shootings occurred. Like Lynell, she told Matthews that Khareem had also told her to go home.

At trial, the People called Arkiesa and Lynell as prosecution witnesses; however, both women recanted their prior statements. Arkiesa testified that she never saw anybody shooting and, when confronted by the fact that she had previously identified Jalani from a photo array, explained that she had only indicated to Matthews that she saw him that night. When asked about her specific representations that Joh was the shooter and that she saw Jalani jump into Khareem's car, Arkiesa testified that she had heard statements regarding the incident from other sources, and that she never saw Jalani jump into Khareem's car or fire shots that night. She also testified that she could not read, and therefore did not understand the contents of the written statement she had signed when Matthews interviewed her.

Likewise, Lynell testified that she did not see anyone, including Jalani, shooting that night and that she tried to communicate that fact to the People prior to trial. When confronted with her prior inconsistent statements to Matthews, where she also identified Joh as a shooter and stated that she had seen Jalani "come from across the road and fire[] two shots while Monzo was on the ground," (J.A. 583), Lynell also claimed that she could not read and denied making the statements contained in the document.

During trial, the People attempted to offer into evidence those written statements as substantive evidence pursuant to section 19 of title 14 of the

1029

Virgin Islands Code.[2] Although Joh objected on the ground that section 19 violated due process, Jalani, through his counsel, argued that section 19 represented the appropriate legal authority, and that Lynell and Arkiesa's prior statements were admissible as substantive evidence pursuant to that statute. Nevertheless, Jalani contended that section 19 did not allow the physical statements themselves to be admitted into evidence, but proposed that the People call Matthews as a witness, and allow him to testify to what Arkiesa and Lynell had told him. The Superior Court agreed with Jalani, and pursuant to its ruling, the People called Matthews as a witness, who recounted his prior interviews with Arkiesa and Lynell. In addition to hearing testimony from Benitez and other law enforcement officers, a forensic specialist, Maurice L. Cooper, testified that he performed a ballistics test on the casings recovered at the crime scene, and concluded that all of the .380 caliber cartridge casings were fired from the weapon that was recovered from Jalani. (J.A. 1153.) Cooper also opined that the unexpended cartridge recovered from Jalani's pocket was the same brand as the ammunition recovered from the scene, and that it could have originated in the same box.

Ultimately, the jury found Jalani guilty of first-degree murder for Almonzo's death, one count of first-degree assault for shooting Roberts, one count of unauthorized possession of a firearm during the commission of a crime of violence, and reckless endangerment in the first degree, but acquitted him of all charges stemming from the shooting of Lester. After considering various post-trial motions, the Superior Court orally sentenced Jalani and memorialized its decision in a May 17, 2012 Judgment and Commitment, which, among other things, imposed a

---

[2] Section 19 reads, in its entirety, as follows:

Evidence of a prior statement, oral or written, made by a witness is not made inadmissible by the hearsay rule if the prior statement is inconsistent with his testimony at a hearing or trial. After the witness has been given an opportunity at such hearing or trial to explain or deny the prior statement, the court shall allow either party to prove that the witness has made a prior statement, oral or written, inconsistent with his sworn testimony. Such prior statement shall be admissible for the purpose of affecting the credibility of the witness or for proving the truth of the matter asserted therein if it would have been admissible if made by the witness at the hearing or trial. Each party shall be allowed to cross-examine the witness on the subject matter of his current testimony and the prior statement.

14 V.I.C. § 19.

mandatory sentence of life imprisonment without the possibility of parole for the first-degree murder charge.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Title 4, section 32(a) of the Virgin Islands Code gives this Court "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." The written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment. *See, e.g., Jackson-Flavius v. People*, 57 V.I. 716, 721 (V.I. 2012) (citing *Potter v. People*, 56 V.I. 779, 787 (V.I. 2012)). Therefore, this Court possesses appellate jurisdiction over this appeal.

"Ordinarily, the standard of review for this Court's examination of the Superior Court's application of law is plenary, while findings of fact are reviewed for clear error." *Gumbs v. People*, 59 V.I. 784, 787 (V.I. 2013) (quoting *Rawlins v. People*, 58 V.I. 261, 268 (V.I. 2013)). However, the Superior Court's decisions to admit evidence or to impose a certain sentence are reviewed solely for abuse of discretion unless the Superior Court bases its decision on application of legal precepts, in which case review is plenary. *Simmonds v. People*, 59 V.I. 480, 485 (V.I. 2013) (collecting cases).

Nevertheless, when a criminal defendant fails to object to a Superior Court decision or order, this Court ordinarily only reviews for plain error, provided that the challenge has been forfeited rather than waived. *See* V.I.S.CT.R. 4(h); *see also Francis v. People*, 52 V.I. 381, 390 (V.I. 2009). For this Court to reverse the Superior Court under the plain error standard of review, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997)). But even "[i]f all three conditions are met," this Court may reverse the Superior Court "only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 390-91. In contrast, if an error has been waived through the affirmative consent of either the defendant or his counsel, appellate review is completely foreclosed, even under the strict plain error standard. *Latalladi v. People*, 51 V.I. 137, 143-44 (V.I. 2009).

## B. Admission of Prior Inconsistent Statements

Jalani, as his primary issue on appeal,[3] challenges the admission of Arkiesa and Lynell's prior inconsistent statements as substantive evidence. According to Jalani, section 19 of title 14 of the Virgin Islands Code, which the Superior Court relied upon to admit those statements, was implicitly repealed when the Legislature enacted Act No. 7161 to require use of the Federal Rules of Evidence.[4] We agree with Jalani that Act No. 7161 implicitly repealed section 19, and that Federal Rule of Evidence 801(d)(1)(A) governed admission of those statements. *See Simmonds*, 59 V.I. 480, 494. Nevertheless, we decline to disturb his convictions on this basis because Jalani — unlike his co-defendant, Joh — invited the error, and therefore waived, rather than forfeited, appellate review of that evidentiary decision.

---

[3] Although Jalani has not challenged the sufficiency of the evidence on appeal, we note that his co-defendant, Khareem, did so in his own appeal. *Hughes v. People*, 59 V.I. 1015, 1019 (V.I. 2013). This Court has previously held that when one co-defendant receives reversal on appeal by raising an issue that a second co-defendant neglected to brief, the interests of justice require providing the second co-defendant with the same remedy, provided that the co-defendant has forfeited, rather than waived, consideration of that issue. *Boston v. People*, 56 V.I. 634, 644-45 (V.I. 2012). However, even if Khareem were to ultimately succeed in his sufficiency argument in his own appeal, we would not apply the principle recognized in *Boston* to this case because the evidence introduced at trial was sufficient to sustain Jalani's murder conviction, given that Lynell, through her prior statement, stated that she saw Jalani shoot Almonzo. *See Ambrose v. People*, 56 V.I. 99, 107 (V.I. 2012) ("[W]hen an appellate court reviews the sufficiency of the evidence, it must 'consider all the evidence the [jury] had before it, including any evidence that it is later determined to be inadmissible.' " (quoting *State v. Frazier*, 2001 SD 19, 622 N.W.2d 246, 261 (S.D. 2001))). Additionally, several law enforcement witnesses testified to having found two firearms on Jalani's person, one of which had been fired and contained the same type of ammunition as that recovered at the scene, and testified that Jalani did not have a license to possess a firearm in the Virgin Islands, which is more than sufficient evidence to sustain the remaining convictions.

[4] Specifically, Jalani argues that the Legislature, by repealing section 932 of title 5 of the Virgin Islands Code — a provision contained in chapter 67 of title 5 dealing with prior inconsistent statements that is virtually identical to section 19 of title 14, in that it permitted, "to prove the truth of the matter . . . [a] statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness" — and replacing it with Federal Rule of Evidence 801(d)(1)(A) through Act No. 7161, implicitly repealed section 19. In *Simmonds*, which this Court issued approximately three months after Jalani filed his brief, this Court found that section 19 had been implicitly repealed for similar reasons. 59 V.I. at 492.

■ This Court has repeatedly held that when a defendant, through his counsel, induces or encourages the Superior Court to commit an error, the invited error doctrine precludes that error from forming the basis for reversal on direct appeal. *See, e.g., Powell v. People*, 59 V.I. 444, 462 (V.I. 2013) ("Powell did not object to the evidence at trial, and even stipulated to [its] admission . . . . [T]rial error which is induced, encouraged, acquiesced in, or consented to by defense counsel does not form a basis for reversal on appeal."); *Fontaine v. People*, 56 V.I. 571, 583 (V.I. 2012) ("[T]he invited error doctrine precludes errors stemming from erroneous jury instructions proposed by a defendant's counsel from forming the basis for reversal."); *Duggins v. People*, 56 V.I. 295, 308-09 (V.I. 2012) ("Thus, because Duggins's counsel invited the error by eliciting the testimony in the first place, Duggins has waived any argument based on that evidence."); *Latalladi*, 51 V.I. at 143-44 ("Because Latalladi not only failed to object to the supplemental instruction, but actually suggested that the judge read the statutory definition of forgery again . . . the invited error doctrine precludes Latalladi from objecting to the instruction on appeal."). "Affirmative representations that a party has no objection to the proceedings fall within the scope of the invited error doctrine because such representations reassure the trial court and encourage it to proceed without further consideration of the issues." *State v. Winfield*, 2006 UT 4, 128 P.3d 1171, 1179 (Utah 2006) (citing *State v. Medina*, 738 P.2d 1021, 1023 (Utah 1987)); *see also Zanoletti v. Norle Props., Corp.*, 688 So. 2d 952, 954 (Fla. Dist. Ct. App. 1997) ("Invited error occurs when the appellant somehow induced the specific ruling by her affirmative action . . . ."); *Cordova v. Taos Ski Valley, Inc.*, 121 N.M. 258, 910 P.2d 334, 339 (1995) ("A party who has contributed, at least in part, to perceived shortcomings in a trial court's ruling should hardly be heard to complain about those shortcomings on appeal."). Thus, unlike the mere failure to object, "[w]here invited error exists, it precludes a court from invoking the plain error rule and reversing." *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005). "Indeed, recognizing an invited error would seriously undermine confidence in the integrity of the courts." *United States v. Lespier*, 725 F.3d 437, 450 (4th Cir. 2013) (citing *United States v. Gomez*, 705 F.3d 68, 76 (2d Cir. 2013)).

■ In this case, Jalani unquestionably invited the admission of the prior inconsistent statements as substantive evidence, as demonstrated by the following sidebar interaction between the prosecutor, Jalani's counsel,

Joh's counsel, and the trial judge when the People, during Arkiesa's testimony, moved to admit her physical prior written statements — People's exhibits 107 and 107-D — into evidence.

> [PROSECUTOR]: [T]hey all [should] be entered into evidence as admissible for the purpose of not only affecting the credibility of the witness, but also to prove the truth of the matter asserted in those statements. . . .
>
> [JOH'S COUNSEL]: Yes, your Honor. To the extent counsel is relying on Title 14 Section 19 as a prior inconsistent statement, I believe that statute violates due process to the extent it allows for that out-of-court statement to be used as substantive evidence rather than impeachment evidence. . . .
>
> [JALANI'S COUNSEL]: Your Honor, the Court distributed some law on this right before we left. I have read them and we are all on the same page. . . . The prosecution is trying to admit these documents basically so the jury can read them. I think that's a fundamental misconception of both the Federal Rule and Civil Rule of Title 19. *The reason it's the wrong approach is because while the prosecution may elicit these statements made to the detective*, it may not admit the writing of the detective memorializing what he thinks she said. . . . That is why in the decision you provided us, the *Newton* case, in the penultimate paragraph it sets forth the proper procedure for eliciting such statements wherein it reads, "At trial the government questioned Taylor regarding her statements to police, including the statements which were the subject of Detective Brown's testimony. After giving Taylor an opportunity to explain or deny the statement, the government offered the rebuttal testimony, in which Detective Brown recounted what Taylor had told him regarding her personal observations at the scene of the crime. Admission of his testimony was not improper under the plain language of 14 V.I.C. Section 19."
>
> That is the proper procedure for admitting these statements, and the reason I think the underlying rational[e] for that is clear from the language of the statute itself. . . .
>
> *I don't object to the prosecution eliciting the statements Detective Matthews says Ms. Hughes told him.* I don't object to them being used to impeach her credibility. *I don't object to them coming in for substantive purposes when appropriate . . . but moving the statement into evidence itself is improper. . . .*

[PROSECUTOR]: Your Honor, I believe it was the intent of the legislature to have the whole statement go in and be admitted as a piece of evidence.

THE COURT: Very well. . . . [W]hat I'm inclined to do is permit the People to put the person on the witness stand, that being Detective Matthews who took the statement, to testify as to each and every item that this witness basically told him relative to the incident at hand that this witness has basically said something different to here in court as opposed to the actual document going into evidence.

That way — and I'm inclined to think basically the safer thing to do is to allow that because that way basically parties can object to any information that may be objectionable and the Court can actually rule upon it, and that way the jury only hears that information that is admissible; and information that may not be admissible that is contained within the confines of the report basically stay[s] outside the jury room.

So as to the People's Exhibit Number 107 and 107-D, I won't admit those statements into evidence . . . .

(J.A. 229-40 (emphases added).) Unlike Joh, who argued that section 19 should not apply to the case and objected to the admission of any out-of-court statements as substantive evidence, Jalani not only endorsed application of section 19, but conceded that the People could introduce the prior inconsistent statement as substantive evidence, provided that it is done through Matthews's testimony rather than by admitting the physical documents into evidence. Significantly, the Superior Court fully adopted Jalani's proposed solution by denying the People's request to admit the documents themselves into evidence but permitting Matthews to testify to "each and every item" that Arkiesa told him. (J.A. 240.) By proposing that the Superior Court take this action, and in the process actively stating that he does not object to the People eliciting the statements from Matthews and using them as substantive evidence, this case "represents a classic example of invited error." *State v. McNeil*, 2013 UT App 134, 302 P.3d 844, 851 (Utah Ct. App. 2013) (citing *State v. Moa*, 2012 UT 28, 282 P.3d 985, 994 (Utah 2012)). Accordingly, in light of Jalani's stipulation, we decline to review, on direct appeal, the Superior Court's evidentiary decision, for plain error or otherwise. *Powell*, 59 V.I. at 452.

## C. Alleged Discovery Violations

In his appellate brief, Jalani also contends that the People failed to timely disclose various materials in violation of both Federal Rule of Criminal Procedure 16(d)[5] and the rule announced in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). We address each argument in turn.

### 1. *Rule 16(d)*

In a May 17, 2011 motion to compel discovery, Jalani demanded that the Superior Court direct the People to disclose the identity and contact information of witnesses that had identified him; photo arrays shown to those witnesses and information pertaining to the preparation of those photo arrays; impeachment evidence against those witnesses; the identity and statements of exculpatory witnesses; reports of all law enforcement contacts with Jalani that took place prior to the shooting incident; potential impeachment evidence against Jalani; and potential impeachment evidence for any witness the People intended to use at trial. (J.A. 84.) Ultimately, the Superior Court did not grant access to all of these items, but only ordered the disclosure of three witnesses and instructed the People to allow defense counsel to speak with the investigating officers in the case. According to Jalani, the Superior Court should instead have dismissed the charges against him or imposed sanctions against the People, as permitted by Rule 16(d). Additionally, Jalani challenges the late disclosure of various materials, including (1) a color copy of the photo array from which Arkiesa identified him, (2) a witness's conviction for misdemeanor domestic violence, (3) a forensic analysis, ballistics report, and photographs relating to the casings recovered from the crime scene, (4) a report and other materials related to a witness's shoe, which the witness had alleged had blood on it, and (5) a letter Lynell sent to the prosecution recanting her earlier statements to Matthews.

██ Rule 16(d) gives the trial court wide discretion in determining how to handle a party's failure to comply with discovery obligations. FED. R. CRIM. P. 16(d) (allowing the court to order compliance, grant a

---

[5] To the extent not inconsistent with local law, the Federal Rules of Criminal Procedure apply to Superior Court proceedings through Superior Court Rule 7.

continuance, prohibit a party from introducing evidence that was not disclosed, or enter any other order found to be "just under the circumstances"). In *People v. Rodriguez*, S. Ct. Crim. No. 2009-0028, 2010 V.I. Supreme LEXIS 15, *12 (V.I. Apr. 14, 2010) (unpublished), this Court set forth three factors that the Superior Court should balance in determining how to address a claim that the People have failed to honor their discovery obligations under Rule 16(d):

> (1) The reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance.

*See id.*, 2010 V.I. Supreme LEXIS 15, at *12-13 ("To support a finding of prejudice, the court must determine that the delay impacted the defendant's ability to prepare or present its case.").

■ ■ As a threshold matter, we note that the People were not necessarily obligated to produce the vast majority of the materials Jalani identified in his May 17, 2011 motion. For instance, although Jalani requested the names and contact information of all witnesses that had identified him, it is a "well established principle that the government is not automatically required to disclose the name of a witness in a non-capital criminal case." *Gov't of the V.I. v. Martinez*, 847 F.2d 125, 128 (3d Cir. 1988) (citing *United States v. DiPasquale*, 740 F.2d 1282, 1293 (3d Cir. 1984)); *United States v. Reyes*, 911 F. Supp. 64, 65 (N.D.N.Y. 1996) ("FED. R. CRIM. P. 16 does not generally require the government to furnish the names and addresses of its witnesses." (citing *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990)); *see also* FED. R. CRIM. P. 16 advisory committee's notes ("[I]t is not in the interest of the effective administration of criminal justice to require that the government or the defendant be forced to reveal the names and addresses of its witnesses before trial. Discouragement of witnesses and improper contact directed at influencing their testimony, were deemed paramount concerns in the formulation of this policy."). Similarly, Rule 16 does not require disclosure of impeachment evidence, which would include Lynell's letter to the prosecution. *See United States v. Tucker*, 371 Fed. Appx. 676, 678 (7th Cir. 2010) ("Rule 16 does not compel the government to disclose prior statements by any witness except an expert; nor does the rule require

disclosure of impeachment evidence." (citing *Degen v. United States*, 517 U.S. 820, 825, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996))). Moreover, Rule 16, by its own terms, does not confer upon a defendant a right to obtain or inspect "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."[6] FED. R. CRIM. P. 16(a)(2).

 ██ We agree with Jalani, however, that the People were required to provide him with a color copy of the photo array. *See* FED. R. CRIM. P. 16(a)(1)(E). Nevertheless, "[n]o error or defect in any ruling or order or in anything done or omitted by the Superior Court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." V.I.S.CT.R. 4(i). Although the People failed to produce a color copy of the photo until a suppression hearing that occurred shortly before trial, the record reflects that the late disclosure in no way prejudiced Jalani's ability to cross-examine Matthews at either trial or the suppression hearing. Moreover, Jalani's request for a color copy of the photo array appears to have been based on speculation that he may have worn a prison jumpsuit in the photo selected, which the color version illustrates was not the case. Similarly, the People's failure to disclose Jalani's prior criminal record, if any, is harmless in light of the fact that Jalani elected not to testify at trial. Likewise, while the People did not produce, until approximately two weeks before trial, a particularly critical ballistics analysis report concluding that casings discovered on the scene were discharged from a

---

[6] In his appellate brief, Jalani also cites the People's failure to produce a report concerning statements Almonzo allegedly made to a loved one in the ambulance prior to passing. It is unclear the remedy Jalani seeks for this nondisclosure, for he spends the majority of the section in his brief arguing that the trial court erred in failing to exclude evidence that was not timely disclosed — however, in this instance, the court did not permit the People to elicit the actual statements Almonzo made from the witness at trial, but rather only allowed testimony on the topic to the extent it demonstrated that Almonzo was alive and then died after being shot. Similarly, it is unclear what remedy Jalani seeks concerning the People's failure to disclose a report concerning the recovery of the surveillance video at Gertrude's. From the record, it appears that the actual video was disclosed, so it is likely that no abuse of discretion occurred in the event that the court failed to exclude the video, for chain of custody arguments go to the weight rather than the admissibility of evidence. *Browne v. People*, 56 V.I. 207, 221 n.12 (V.I. 2012) (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 336, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009)).

weapon found in Jalani's possession, it is clear to us that Jalani was not prejudiced by this late disclosure, considering the extent and detail of his cross-examination of Cooper at trial.[7] Under these circumstances, we find that the Superior Court did not abuse its considerable discretion pursuant to Rule 16(d).[8]

## 2. *Brady Violations*

■ It is well established that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Accordingly, "[t]o prevail on a *Brady* claim, the defendant must show that the evidence was (1) suppressed, (2) favorable, and (3) material to the defense." *People v. Ward*, 55 V.I. 829, 842 (V.I. 2011) (quoting *Bowry v. People*, 52 V.I. 264, 274 (V.I. 2009)). Although Rule 16 does not require disclosure of impeachment evidence, such evidence may qualify as *Brady* material. *Bowry*, 52 V.I. at 274 (collecting cases). However, evidence is not considered to be suppressed where the defendant already has the information in question or could obtain it using reasonable diligence.

---

[7] Jalani also contends that the photographs produced with the report "directly contradicted the Government's contention that the shell casings found at the scene were fired by the same weapon." (Appellant's Br. 22.) He asserts that this discrepancy not only warranted exclusion, but demonstrated a violation of *Brady*. Jalani cross-examined Cooper on precisely this point — that the photos seemed to contradict the conclusion of the analysis — and Cooper acknowledged that a dimple was produced in the middle of the firing impression when he test-fired the .380 Bersa, but did not appear when he compared the test-fired casing to the casing from the scene. (Trial Tr. 60.) Not only does the record indicate that the late disclosure did not prejudice Jalani's case, but it also belies any notion that the evidence was suppressed to the point that it could not be used effectively at trial, so as to implicate *Brady*. *See People v. Ward*, 55 V.I. 829, 848 (V.I. 2011).

[8] In his discussion of purported discovery violations, Jalani also opposes what he characterizes as the "creation" of evidence, in the form of the diagrams of the casings recovered at the crime scene, by a prosecution witness, Detective Paul Schuster. However, Jalani did not object to the admission of these exhibits and he conducted an extensive cross-examination concerning their contents and accuracy, effectively highlighting the discrepancies he sought to emphasize between the diagrams and photos that Schuster relied on versus the diagram he created — namely, the argument that Schuster had inserted .380 casings that were not actually found in the described locations. Moreover, Jalani produced his own witness who served to rebut the accuracy of Schuster's "created" diagrams. Accordingly, we find that the Superior Court did not commit plain error by not *sua sponte* striking these materials from the record, pursuant to Rule 16(d) or any other authority.

*Ward*, 55 V.I. at 845 (citing *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984)).

 ██ Although Jalani alleges numerous *Brady* violations in his appellate brief — largely by also recasting his Rule 16 arguments in terms of *Brady* — we hold that *Brady* is not implicated in this matter at all. As we have repeatedly held, a *Brady* violation only occurs if exculpatory information is not disclosed until *after* trial. *See, e.g., George v. People*, 59 V.I. at 368, 378 (V.I. 2013) (citing *United States v Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)); *Ward*, 55 V.I. at 848. In other words, "[e]vidence turned over during trial is not considered suppressed for *Brady* purposes." *United States v. Henderson*, 250 Fed. Appx. 34, 39 (5th Cir. 2007) (citing *United States v. Williams*, 132 F.3d 1055, 1060 (5th Cir. 1998)). Since each piece of purportedly "suppressed" evidence was — at the absolute latest — disclosed during trial, the first prong of *Brady* has not been met with respect to any of Jalani's claims. Accordingly, we find no reason to disturb any of Jalani's convictions on this basis.[9]

### D. Sentencing

 Finally, Jalani, who was sixteen years of age at the time these crimes occurred, argues, and the People concede, that this Court should remand this matter for resentencing in light of the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), in which it held that a sentence of "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual

---

[9] In his appellate brief, Jalani also argues that the prosecutor committed misconduct by referring to him and his codefendants as an "assassination team" with an "assassination plot," and repeatedly describing the officers that apprehended him as "brave" officers whom the jury should be "proud of." (*See, e.g.*, J.A. 643; 653-662.) However, in light of Arkiesa and Lynell's prior inconsistent statements being admitted as substantive evidence — at Jalani's invitation — through Matthews's testimony, the prosecutor possessed a reasonable basis for describing Almonzo's killing as an "assassination," given that the jury heard testimony that Almonzo had been shot at numerous times by Jalani and Joh, with Jalani then quickly fleeing the scene and driving away in a car driven by Khareem. And while we agree that it was improper for the prosecutor to describe the officers in such a manner, we find that these remarks did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process in light of the entire proceeding." *DeSilvia v. People*, 55 V.I. 859, 873 (V.I. 2011).

punishments.' " *Id.* at 2460. Since "judicial opinions announcing new constitutional rules applicable to criminal cases are retroactive to all cases pending on direct review at the time the new constitutional rule is declared," we agree with the parties that Jalani may receive the benefit of the *Miller* decision notwithstanding the fact that the United States Supreme Court did not issue its opinion until approximately one month after the Superior Court sentenced Jalani to mandatory life imprisonment without parole. *People v. Hudson*, 195 Ill. 2d 117, 745 N.E.2d 1246, 1252 (2001) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987)). Therefore, we remand this matter for resentencing on the first-degree murder conviction. On remand, the Superior Court must conduct a sentencing hearing in order to consider Jalani's "youth and attendant characteristics . . . before imposing a particular penalty" on that conviction. *Miller*, 132 S. Ct. at 2471.

Although the Supreme Court did not expressly lay out a series of factors a court must consider before sentencing a juvenile convicted of first-degree murder, "*Miller* means more than a generalized notion of taking age into consideration as a factor in sentencing." *State v. Null*, 836 N.W.2d 41, 74 (Iowa 2013). In resentencing Jalani, the Superior Court must recognize that "juveniles are more capable of change than are adults and that as a result, their actions are less likely to be evidence of irretrievably depraved character." *Id.* at 75 (quoting *Graham v. Florida*, 560 U.S. 48, 68, 130 S. Ct. 2011, 2026, 176 L. Ed. 2d 825 (2010) (internal quotation marks and alteration omitted)); *see Miller*, 132 S. Ct. at 2465 (a sentence of life without parole "reflects an irrevocable judgment about an offender's value and place in society, at odds with a child's capacity for change" (internal quotation marks and alteration omitted)).

Among the factors relevant to the Superior Court's sentencing determination are Jalani's "chronological age and its hallmark features — among them, immaturity, impetuosity, and failure to appreciate risks and consequences." *Miller*, 132 S. Ct. at 2468; *see also Null*, 836 N.W.2d at 75 ("immaturity, impetuosity, and poor risk assessment, are to be regarded as mitigating, not aggravating factors"). The court must also consider "the family and home environment that surrounds him," as well as the "circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him." *Miller*, 132 S. Ct. at 2468. And whether "he might have been charged and convicted of a lesser offense if not for

incompetencies associated with youth — for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys." *Id.* (citing *Graham*, 560 U.S. at 77-78, 130 S. Ct. at 2032); *see also State v. Henderson*, ___ So. 3d ___, 2013 Ala. LEXIS 107, *61 (Ala. Sept. 13, 2013) (also identifying a juvenile's history of drug abuse, mental health, and "any other relevant factor related to the juvenile's youth" as appropriate considerations).

 In making its sentencing determination, the Superior Court must "recognize that because 'children are constitutionally different from adults,' they ordinarily cannot be held to the same standard of culpability as adults in criminal sentencing." *Null*, 836 N.W.2d at 74 (quoting *Miller*, 132 S. Ct. at 2464). And while the Eighth Amendment does not categorically prohibit a sentence of life without parole for juveniles convicted of first-degree murder, *see Bear Cloud v. State*, 2013 WY 18, 294 P.3d 36, 47 (Wyo. 2013) ("*Miller* does not guarantee the possibility of parole for a convicted juvenile homicide offender"), such a sentence should be "uncommon." *Miller*, 132 S. Ct. at 2469; *see also Null*, 836 N.W.2d at 75 (juvenile life without parole is appropriate "only in rare or uncommon cases"). But if the court does find this case warrants a sentence of life without parole, it "should make findings discussing why the general rule does not apply . . . [that] go beyond a mere recitation of the nature of the crime." *Null*, 836 N.W.2d at 74.

### III. CONCLUSION

Since Jalani affirmatively requested that the Superior Court follow section 19 of title 14 and effectively stipulated to the admission of Arkiesa and Lynell's prior inconsistent statements as substantive evidence through Matthews's testimony, we hold that Jalani invited the error, and has thus waived even plain error review. And although we find that the remaining challenges to his convictions lack merit, we agree with Jalani and the People that resentencing is appropriate on the first-degree murder conviction in light of the new constitutional rule announced in *Miller*. Accordingly, we vacate Jalani's mandatory sentence of life imprisonment without the possibility of parole and remand for resentencing, but affirm the May 17, 2012 Judgment and Commitment in all other respects.